**Ramona HINOJOSA, Plaintiff,**

v.

**Brad LIVINGSTON, et al., Defendants.**

**Civil Action No. 2:13–CV–319.**

United States District Court,
S.D. Texas,
Corpus Christi Division.

Jan. 16, 2014.

Jeffrey S. Edwards, The Edwards Law Firm, Austin, TX, for Plaintiff.

Demetri Anastasiadis, Bruce R. Garcia, Kim J. Coogan, Shanna Elizabeth Molinare, Office of Texas Attorney General, Austin, TX, for Defendants.

## ORDER DENYING DEFENDANT UNIVERSITY OF TEXAS MEDICAL BRANCH'S MOTION TO DISMISS

NELVA GONZALES RAMOS, District Judge.

Before the Court is Defendant University of Texas Medical Branch's Motion to Dismiss under FRCP 12(b)(6). (D.E. 4). For the reasons set forth below, Defendant's motion is **DENIED.**

### I.  Background

On October 15, 2013, Plaintiff, the mother of a former inmate at the Texas Department of Criminal Justice (TDCJ), filed suit against multiple defendants, including the

University of Texas Medical Branch (UTMB or Defendant). On August 29, 2012, Plaintiff's son, who suffered from hypertension, diabetes, depression, schizophrenia, and obesity, died of hyperthermia while incarcerated at TDCJ's Garza West Unit. Plaintiff alleges that the decedent's medical conditions rendered him disabled, and Defendant's failure to make accommodations for those disabilities resulted in the decedent's death. Specifically, Plaintiff argues that a combination of the medical conditions and medications of the decedent made him more vulnerable to suffer adverse consequences as a result of the extreme heat that the inmates at the Garza West Unit must endure. This failure to accommodate, Plaintiff urges, constitutes a violation of the Americans with Disabilities Act (ADA)[1] and the Rehabilitation Act.[2] Plaintiff seeks compensatory and punitive damages as well as attorney's fees.

Defendant urges that Plaintiff's claims against it should be dismissed for failure to state a claim under FED. R. CIV. P. 12(b)(6). Alternatively, Defendant asks that Plaintiff be ordered to "re-plead sufficient facts to identify the elements of her causes of action under the ADA and Rehabilitation Acts." (D.E. 4, p. 5). In support of its motion, Defendant argues that Plaintiff "has not alleged a single fact stating 1) how the inmate was discriminated against by being treated differently than any other inmate, or even other inmates with the same disabilities; 2) what accommodations, if any, the inmate sought for his disability, but was refused or denied; 3) what accommodations, if any, should have been provided without a request, but were denied or refused; or 4) which facilities, programs, or services should have been modified by UTMB." (D.E. 4, ¶ 17).

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must "nudge[ ] their claim across the line from conceivable to plausible" by pleading "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In other words, a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

■ In reviewing a Rule 12(b)(6) motion, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir.2007). However, the Court does not "strain to find inferences favorable to the plaintiff" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 361 (5th Cir.2004) (internal quotation marks and citations omitted).

## III. Discussion

### A. Plaintiff has alleged sufficient facts to state that the decedent was discriminated against by Defendant.

■ Defendant argues that Plaintiff has not alleged any facts stating how the decedent was discriminated against by being treated differently than any other inmate, or even other inmates with the same disabilities. (D.E. 4, ¶ 17).

---

**1.** 42 U.S.C. § 12132.

**2.** 29 U.S.C. § 794.

■ "In the prison context ... failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners." *McCoy v. Texas Dep't of Criminal Justice,* 2006 WL 2331055 at *7 (S.D.Tex. Aug. 9, 2006). "[T]he fact that individuals other than the class members have been unable to obtain benefits does not of itself demonstrate that [disabled individuals] do not face conditions that are more onerous for them because of their particular disabilities." *Henrietta D. v. Bloomberg,* 331 F.3d 261, 279 (2d Cir. 2003).

In her Complaint, Plaintiff alleges "it was well known to ... UTMB leadership" that people who are afflicted with certain medical conditions or are on certain medication are "much more vulnerable to extreme temperatures" because "[t]heir medical conditions prevent their bodies from regulating their temperature, putting them at much greater risk of death." (D.E. 1, ¶ 22). Plaintiff also alleges that UTMB officials "knew [the decedent] suffered from hypertension, diabetes, schizophrenia and/or depression, and was prescribed medications to treat his disabilities." (D.E. 1, ¶ 149). Plaintiff further alleges that "UTMB makes mandatory housing recommendations to TDCJ for some prisoners with disabilities ... [b]ut UTMB and TDCJ policies do not contemplate special housing for prisoners with heat-sensitive disabilities." (D.E. 1, ¶ 42).

Here, Plaintiff has alleged sufficient facts to state how the decedent was discriminated against. Plaintiff alleges that Defendant knew of the risks and dangers associated with certain medical conditions and medications, that Defendant knew the decedent suffered from those conditions and used those medications, and that despite that knowledge, Defendant failed to make reasonable accommodations, resulting in the decedent suffering more pain and punishment than non-disabled prisoners—namely, his death. It is not enough for Defendant to claim that all prisoners in the Garza West Unit—whether suffering from a disability or not—endured the same housing and living conditions that the decedent did because even though the condition complained of was suffered by all of the inmates, Plaintiff has alleged sufficient facts to state that those conditions were more onerous on the decedent due to his particular disabilities. Nevertheless, Plaintiff still pleads facts indicating that UTMB policy permitted housing accommodations for some disabled individuals (i.e., those with mobility impairments requiring a wheelchair), but not for individuals suffering from heat-sensitive disabilities. Accordingly, Plaintiff has alleged sufficient facts to state that Defendant discriminated against the decedent.

**B. Plaintiff need not allege that any accommodations were requested by the decedent and denied by Defendant in order to state a claim for relief under the ADA and Rehabilitation Act.**

■ Defendant argues that Plaintiff has not alleged any facts that would suggest that the decedent requested any accommodations but was denied. (D.E. 4, ¶ 17). "A disabled person's failure to expressly "request" an accommodation ... is not fatal to an ADA[3] claim where the defendant otherwise had knowledge of an

---

**3.** The remedies, procedures, and rights under Title II of the ADA are the same as those set forth in the Rehabilitation Act. 42 U.S.C. § 12133. Therefore, references to the ADA apply equally to the Rehabilitation Act.

individual's disability and needs but took no action." *McCoy v. Texas Dep't of Criminal Justice*, 2006 WL 2331055 at *7 (citing *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996); *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 n. 7 (1st Cir.2001)). In her Complaint, Plaintiff alleges that UTMB officials knew both that the decedent "suffered from hypertension, diabetes, schizophrenia and/or depression, and was prescribed medications to treat his disabilities," (D.E. 1, ¶ 149), and that "extreme temperatures can be deadly," (D.E. 1, ¶ 94), but still failed to protect the decedent from the extreme temperatures that ultimately resulted in his death. Because Plaintiff has alleged that Defendant had knowledge of the decedent's disability and the needs that his disability created but took no action, it was not necessary that the decedent request any accommodation, and his failure to do so is not fatal to Plaintiff's claim.

### C. Plaintiff has alleged sufficient facts concerning the accommodations that should have been provided without a request, but were denied or refused as well as which facilities, programs, or services should have been modified by Defendant.

In its final arguments in support of a Rule 12(b)(6) motion to dismiss, Defendant argues that Plaintiff has not alleged any facts to state what accommodations, if any, should have been provided without a request, but were denied or refused or which facilities, programs, or services should have been modified by UTMB. (D.E. 4, ¶ 17).

With regard to accommodations that should have been provided, Plaintiff alleges that despite an "epidemic of heat-related deaths" and UTMB officials' knowledge of the "extreme indoor temperatures at the Garza West Unit in the summer," UTMB officials did not "take any steps to house prisoners with heat-sensitive conditions in [certain parts of the Garza West Unit where prisoners could live until intake physicals are performed and prisoners with heat-sensitive medical conditions were identified]. (D.E. 1, ¶¶ 38 and 114). Plaintiff also complains that UTMB policy "does not contemplate special housing for prisoners with heat-sensitive disabilities" and "only addresses preventing heat-related injuries in the workplace," while neglecting to address prisoners' housing assignments or living areas. (D.E. 1, ¶¶ 40 and 42).

With regard to the facilities, programs, or services that should be modified, Plaintiff complains that UTMB's intake process is flawed in that "it can take up to ten days for prisoners to receive an intake physical." (D.E. 1, ¶ 62). This delay creates a "loophole" that "leaves inmates with heat sensitive conditions and disabilities ... especially vulnerable to death because they receive no accommodations for their heat sensitive disabilities." (D.E. 1, ¶ 64–65). Plaintiff also complains that Defendant's failure to employ 24–hour medical staff at the Garza West Unit resulted in fatal delay and denial of "vital medical care" to the decedent. (D.E. 1, ¶¶ 68 and 70). Plaintiff alleges that the decision not to have around-the-clock medical care was made for financial reasons "despite knowing it placed inmates at risk...." (D.E. 1, ¶ 69).

Although this is not an exhaustive recitation of the factual allegations in the Complaint, Plaintiff has alleged at least some facts sufficient to identify what accommodations should have been provided to the decedent and what facilities, programs, or services should have been modified by Defendant. Accordingly, Plaintiff's

pleadings are sufficient to defeat a Rule 12(b)(6) motion to dismiss.

## IV.  Conclusion

For the reasons discussed above, Defendant's Motion to Dismiss Under FRCP 12(b)(6), (D.E.4), is **DENIED.** Because this Court finds that Plaintiff has pleaded sufficient facts to identify the elements of her ADA and Rehabilitation Act claims, Defendant's alternative request for a more definite statement is also **DENIED.**